**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Theresa I. Casey,<br><br>               Plaintiff,<br><br>v.<br><br>Wright Medical Technology, Inc., a foreign corporation,<br><br>               Defendant. | No. CV-19-05360-PHX-NVW<br><br>**ORDER** |

Before the Court is Defendant Wright Medical Technology, Inc.'s ("Wright") Partial Motion to Dismiss (Doc. 11). For the reasons stated below, the motion shall be granted in part and denied in part.

**I.     BACKGROUND**

The following allegations from Plaintiff Theresa I. Casey's ("Casey") First Amended Complaint (Docs. 7, 7-1, and 7-2) are presumed true at this stage. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013) ("[O]n a motion to dismiss, the court presumes that the facts alleged by the plaintiff are true.").[1]

On August 18, 2008, Casey underwent a total hip arthroplasty (more commonly known as hip replacement surgery), during which Dr. Dwight S. Keller, M.D. ("Doctor

---

[1] Unless otherwise indicated, in citing cases, all internal quotation marks, citations, emphases, alterations, and footnotes are omitted.

Keller") implanted in Casey's right hip a variety of artificial hip devices designed, manufactured, distributed, sold, and marketed by Wright, including the product at issue here, the "Wright Profemur® Plasma Z Stem" and its neck. (Docs. 7, 7.1, and 7.2 at ¶¶ 5, 7-8, 69.) A little over a year later, after Casey began experiencing pain in her right hip, Dr. Keller conducted a total hip arthroplasty revision, during which he found the Wright artificial hip had dislocated and again implanted a variety of Wright artificial hip devices. (*Id.* at ¶¶ 71-73.) This procedure did not put an end to Casey's troubles, as she had to undergo a second total hip arthroplasty revision in December 2011 due to another breakdown of the Wright artificial hip. (*Id.* at ¶¶ 75-76.) She underwent a third such surgery in November 2017 after the Wright artificial hip again failed. (*Id.* at ¶¶ 88-89.)

Wright's titanium Profemur® system is a modular hip stem and neck system. (*Id.* at ¶ 35.) The modular stem has a separate neck component that attaches to the top of the stem and a femoral ball which in turn attaches to the modular neck. (*Id.* at ¶¶ 37, 39-40.) According to Wright, "[n]o existing hip implant is better suited to address . . . the historical challenges of total hip arthroplasty." (*Id.* at ¶ 41.)

In marketing the Profemur® system in 2008, 2009, and 2011 to Casey, Dr. Keller, and the consuming public, Wright stated: "[t]he clinical effectiveness and dependability of the modular necks has been consistently demonstrated throughout the PROFEMUR® Hip clinical history. Utilized in both primary and revision applications, the current neck design has been successfully employed to improve surgical outcomes with no reported failures." (*Id.* at ¶¶ 42, 125.) Touting the strength of the coupling between the neck and the stem, Wright further indicated:

> Modular neck clinical experience and extensive laboratory tests have proven the coupling between the modular neck and femoral implant provides:
>
> - Structural reliability
> - Absence of significant micromovement
> - Absence of fretting corrosion

> These excellent characteristics are obtained due to the patented geometry of the coupling. The necks are made from titanium alloy (Ti6Al4V) which is proven to afford suitable mechanical properties, ideal biocompatibility, and excellent resistance to corrosion.

(*Id.* at ¶¶ 43, 125.)

However, Wright "did not test the Profemur® Plasma Z system for safety before its release to the public." (*Id.* at ¶ 48.) Indeed, Wright marketed the system "as having a clinical history of being safe on account of the clinical history of predicate devices, not the actual device being marketed" and knew "there was no clinical evidence to support its contention that its device was safe or effective." (*Id.* at ¶¶ 51-52.) On the contrary, "[t]he testing done to the product prior to the launch was woefully inadequate, unreasonable, and not representative of real-world, clinical situations." (*Id.* at ¶ 50.)

As it turned out, the Profemur® Plasma Z system was not the Wright stuff. The system's titanium alloy modular neck was prone to fretting and corrosion, which in turn made it susceptible to fracture. (*Id.* at ¶¶ 53-55.) By 2008, Wright received a large number of reports and warnings from surgeons and others regarding the Profemur® Plasma Z system components and until 2009, the system experienced a high rate of failures worldwide. (*Id.* at ¶¶ 64-65.)

In 2009, Wright, aware of the "high rates of problems" with the Profemur® Plasma Z system, changed the design of the modular necks "from a titanium alloy to a cobalt-chrome alloy in order to try to increase its safety and efficacy." (*Id.* at ¶¶ 57, 61.) Yet, Wright did not recall the previously-issued titanium alloy modular necks and did not issue "any warning to doctors or patients who had previously received an implanted titanium modular neck." (*Id.* at ¶ 59.) Moreover, in 2008, 2009, and 2011, Wright did not disclose information regarding the performance history, dangers, and risks of the Profemur® Plasma Z system to either Casey, Dr. Keller, or the consuming public. (*Id.* at ¶ 122.)

Casey initiated this action in the Superior Court of the State of Arizona in and for Maricopa County on September 18, 2019 against Wright, as well as against Wright Medical Group, Inc. and numerous fictitious individuals and entities. (Doc. 1-3.) Defendants

timely removed the action to this Court. (Doc. 1.) On October 16, 2019, Casey filed a First Amended Complaint (the "Complaint") against Wright, which alleges four causes of action: (1) Strict Product Liability—Design Defect, (2) Strict Product Liability—Failure to Issue Post-Sale Warnings, (3) Negligence, and (4) Negligent Misrepresentation. (Docs. 7, 7-1, and 7-2.) Wright's motion seeks an order dismissing Casey's negligent misrepresentation cause of action and prayer for punitive damages.[2]

## II. ANALYSIS

### A. Pleading Standard

When considering a motion to dismiss, a court evaluates the legal sufficiency of the plaintiff's pleading. Dismissal under Federal Rule of Civil Procedure ("Rule") 12(b)(6) can be based on the "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In deciding a motion to dismiss under Rule 12(b)(6), all allegations of material fact are assumed to be true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, this principle does not apply to legal conclusions or conclusory factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Neither do "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

Under Rule 8(a)(2), a pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint need contain only "enough facts to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual

---

[2] The Court notes Casey's Response in Opposition to Defendant's Partial Rule 12 Motion to Dismiss (Doc. 14) was untimely filed. Wright filed its motion on October 30, 2019 (Doc. 11) and Casey's response was due on November 13, 2019 under LRCiv 7.2(c). Casey filed her response on November 19, 2019. (Doc. 14.) The Court urges Casey's counsel to adhere to all deadlines set forth by the Federal Rules of Civil Procedure, the Local Rules of Civil Procedure, and the Court in the future.

- 4 -

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* To show that the plaintiff is entitled to relief, the complaint must permit the court to infer more than the mere possibility of misconduct. *Id.* If the plaintiff's pleading falls short of this standard, dismissal is appropriate.

Some claims must additionally satisfy a higher standard of pleading under the Federal Rules of Civil Procedure. Wright argues Casey's negligent misrepresentation claim is one of them. Specifically, Wright contends Casey's negligent misrepresentation claim must meet the heightened pleading requirements contained in Rule 9(b). Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." It therefore "requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Bosse v. Crowell Collier & Macmillan*, 565 F.2d 602, 611 (9th Cir. 1977). The United States Court of Appeals for the Ninth Circuit (the "Court of Appeals") has interpreted Rule 9(b) "to mean that the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. ServWell Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986). In other words, "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Whether Rule 9(b) applies to negligent misrepresentation claims is an issue that has divided numerous courts of appeals. *Compare Trooien v. Mansour*, 608 F.3d 1020, 1028 n.3 (8th Cir. 2010) (finding the district court correctly assessed the plaintiff's negligent misrepresentation claim under Rule 9(b)), *and Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 583 (2d Cir. 2005) (determining that "a negligent misrepresentation" "claim must be pled in accordance with the specificity criteria in Rule 9(b)"), *with Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir.

2007) ("This [negligent misrepresentation] claim is not governed by the heightened pleading standard of Rule 9(b)."), *CNH Am. LLC v. Int'l Union, United Auto., Aerospace & Agricultural Implement Workers of Am. (UAW)*, 645 F.3d 785, 794 (6th Cir. 2011) (assessing a negligent misrepresentation claim solely under Rule 8(a)), *and Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 394-97 (5th Cir. 2005) (same). The Court of Appeals has not published a decision on this issue,[3] and not surprisingly, district courts in the Ninth Circuit have issued conflicting rulings. *Compare Hendrickson v. Popular Mortg. Servicing, Inc.*, No. C 09-00472 CW., 2009 WL 1455491, at *4 n.2 (N.D. Cal. May 21, 2009) ("Most district courts within the Ninth Circuit have held that a negligent misrepresentation claim is subject to the heightened pleading requirements of Rule 9(b)."), *and Neilson v. Union Bank of Calif., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) ("It is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements."), *with Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413, 417 (C.D. Cal. 2012) ("Because the California tort of negligent misrepresentation has a critically different element from the tort of fraud, analyzing negligent misrepresentation under Rule 9(b) is contrary to both the express language and policy of the statute."), *and Cutler v. Rancher Energy Corp.*, No. SACV 13-00906-DOC (JPRx), 2014 WL 1153054, at *4 (C.D. Cal Mar. 11, 2014) ("This Court finds that Rule 9(b) does not apply to claims of negligent misrepresentation for two reasons: (1) the Ninth Circuit has held that Rule 9(b) does not apply in cases where fraud is not an

---

[3] The Court of Appeals has encountered this issue in numerous unpublished decisions, most of which have indicated Rule 9(b) applies to negligent misrepresentation claims. *Compare Kelley v. Rambus, Inc.*, 384 F.App'x 570, 573 (9th Cir. June 16, 2010) (holding a negligent misrepresentation claim failed to meet Rule 9(b)'s heightened pleading standard), *Puri v. Khalsa*, 674 F.App'x 579, 690 (9th Cir. Jan. 6, 2017) (same), *and Vidor v. Am. Int'l Grp., Inc.*, 491 F.App'x 828, 829 (9th Cir. Nov. 20, 2012) (same), *with Miller v. Int'l Bus. Machs. Corp.*, 138 F.App'x 12, 17 (9th Cir. May 27, 2005) ("[C]laim nine is not a fraud claim. Rather, it is a negligent misrepresentation claim. We hold that Rule 8(a) has been satisfied . . . ."). These decisions, of course, "are not precedent" and accordingly have no legal weight. 9th Cir. R. 36-3(a) ("Unpublished decisions and orders of this Court are not precedent . . . .").

essential element of a claim, and (2) California state law suggests that such claims sound primarily in negligence, not fraud."); *see also Maeda v. Pinnacle Foods Inc.*, 390 F. Supp. 3d 1231, 1257 (D. Haw. 2019) ("[T]he judges in this district [the District of Hawai'i] have consistently concluded that a negligent misrepresentation claim is not subject to FRCP 9(b) because it does not require intent." (citing numerous cases)).

Decisions of this Court have often cut in favor of Rule 9(b) applying to negligent misrepresentation claims. *E.g.*, *Gould v. M & I Marshall & Isley Bank*, 860 F. Supp. 2d 985, 988 n.2 (D. Ariz. 2012) ("Negligent misrepresentation must also meet the particularity standards of 9(b)." (citing *Sweeney v. Darricarrere*, No. 2:09-cv-00266 JWS., 2009 WL 2132696, at *12 n.109 (D. Ariz. July 14, 2009))); *Patricia Bugher Family P'ship LLLP v. Transamerica Life Ins. Co.*, No. CV-18-04629-PHX-GMS, 2019 WL 2744843, at *2 (D. Ariz. July 1, 2019) ("Rule 9(b) requires a party alleging fraud and negligent misrepresentation to state with particularity the circumstances constituting fraud or mistake."); *see also Sweeney*, 2009 WL 2132696, at *12 n.109 (finding "[m]ost district courts within the Ninth Circuit have held that" Rule 9(b) applies to negligent misrepresentation claims (quoting *Hendrickson*, 2009 WL 1455491, at *4)). Yet, these decisions have no precedential value either. Moreover, they are unpersuasive, as while the Court of Appeals has not articulated a *per se* rule regarding the relationship between Rule 9(b) and negligent misrepresentation claims, it has devised a framework regarding the general applicability of Rule 9(b) that can readily be employed here.

When deciding whether Rule 9(b) applies to a claim, a court must first determine whether fraud is an essential element of that claim. If so, Rule 9(b) applies. *See United States v. Corinthian Colls.*, 655 F.3d 984, 992 (9th Cir. 2011) (applying Rule 9(b) to a qui tam action under the False Claims Act because such actions "involve allegations of fraud"); *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 612-13 (9th Cir. 2017) (applying Rule 9(b) to a securities fraud claim under Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10(b)(5)). If not, Rule 9(b) can nevertheless apply if "the claim is said to be 'grounded in fraud' or to 'sound in fraud.'"

*Vess*, 317 F.3d at 1103-04. As the Court of Appeals explained in *Vess*, should a plaintiff allege a "unified course of fraudulent conduct" and rely "entirely on that course of conduct as the basis of a claim," that claim is "grounded in fraud . . . and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Id.*; *see also In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1404-05 (9th Cir. 1996) (holding Rule 9(b) applies to claims under Section 11 of the Securities Act of 1933 "when, as here, they are grounded in fraud"). In contrast, should a plaintiff allege "some fraudulent and some non-fraudulent conduct," "only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements." *Id.* at 1104. In that case, Rule 9(b) only applies to "averments of fraud supporting a claim," rather than the claim as a whole. *Id.* Allegations of non-fraudulent conduct need only satisfy the ordinary pleading requirements of Rule 8(a). *Id.* at 1105. If particular allegations of fraud are insufficiently pleaded, a court should disregard them and then examine the remaining allegations to determine whether they state a claim. *Id.* (citing *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001); *In re NationsMart Corp. Sec. Litig.*, 130 F.3d 309, 315 (8th Cir. 1997)).

A strikingly similar case illustrates the above framework. In *Parcell*, the plaintiffs sued Wright for damages arising out of an allegedly defective hip-related device. *Parcell v. Wright Med. Tech., Inc.*, No. CV 12-0368-PHX-JAT, 2012 WL 2675258, at *1 (D. Ariz. July 6, 2012). Wright moved to dismiss, among other claims, the plaintiffs' negligent misrepresentation claim. *Id.* at *2. The Court found that under Arizona law, "negligent misrepresentation does not include fraud as a necessary element" and then determined the plaintiffs' claim was based on the same "unified course of fraudulent conduct" they relied on in support of their fraud claim. *Id.* at *6. Critically, the Court noted "[p]laintiffs' characterization of the conduct in the Complaint, which includes several allegations of intentionally misleading statements, is more indicative of fraud than negligence." *Id.* The Court dismissed the negligent misrepresentation claim under Rule 9(b). *Id.; see also Blaney v. U.S. Bancorp*, No. CV 11-2500-PHX-SRB, 2012 WL 13024086, at *5 (D. Ariz. June 19, 2012) (finding a negligent misrepresentation claim that alleged the defendants

"engaged in a plan, scheme[,] and course of conduct to negligently induce [Plaintiff] into making payments" was not grounded in fraud).

Whether Rule 9(b) applies to Casey's negligent misrepresentation claim is therefore hardly an insoluble issue. First, fraud is not an essential element of a negligent misrepresentation claim under Arizona law. In Arizona, "[n]egligent misrepresentation is a separate tort from that of fraud." *Arnold & Assocs., Inc. v. Misys Healthcare Sys.*, 275 F. Supp. 2d 1013, 1029 (D. Ariz. 2003) (citing *Pettay v. Ins. Mktg. Servs. (West)*, 156 Ariz. 365, 368, 752 P.2d 18, 21 (Ct. App. 1987)). It "is committed by the giving of false information intended for the guidance of others and justifiably relied upon by them causing damages if the giver of the false information fails to exercise reasonable care or competence in obtaining or communicating the information." *St. Joseph's Hosp. and Med. Ctr. v. Reserve Life Ins. Co.*, 154 Ariz. 307, 312, 742 P.2d 808, 813 (1987) (en banc); *see also* Restatement (Second) of Torts § 552 (explaining the elements of negligent misrepresentation). Arizona courts have long construed "[a] claim for relief for negligent misrepresentation" as "one governed by the principles of the law of negligence," *Van Buren v. Pima Cmty. Coll. Dist. Bd.*, 113 Ariz. 85, 87, 546 P.2d 821, 823 (1976) (en banc), rather than the "rubric of fraudulent misrepresentation." *Pettay*, 156 Ariz. at 368, 752 P.2d at 21. Accordingly, fraud is not a necessary element of an Arizona negligent misrepresentation claim.

Second, Casey's negligent misrepresentation claim appears to be "grounded in fraud." While the Complaint alleges that Wright's statements or omissions were "unreasonable," "negligent," "careless," and made without "reasonable care," (Docs. 7, 7.1, 7.2 at ¶¶ 122-23, 125, 126), it also alleges—based on the same course of conduct— that Wright "consciously disregard[ed] the substantial risk that its conduct through the sale and use of the Profemur [] Plasma Z Stem system product might significantly injure the rights of others, [and] consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to other persons." (*Id.* at ¶ 130.) In addition, the Complaint alleges Wright "marketted [sic] its . . . device as having a clinical history of

being safe" while it "knew that there was no clinical evidence to support its contention that its device was safe or effective." (*Id.* at ¶¶ 51-52.) Further, the Complaint alleges Wright was "aware of the defective and unreasonably dangerous condition in its Profemur® Plasma Z system and the unreasonably high rates of problems with it" prior to Casey's surgeries. (*Id.* at ¶ 61.) These allegations are more indicative of fraud than negligence, given their emphasis on Wright's knowledge of the issues that allegedly caused Casey's injuries, rather than what Wright reasonably should have known. Casey's negligent misrepresentation claim must therefore satisfy the heightened pleading requirements contained in Rule 9(b).

### B. Sufficiency of Negligent Misrepresentation Allegations

In Arizona, negligent misrepresentation "is committed by the giving of false information intended for the guidance of others and justifiably relied upon by them causing damages if the giver of the false information fails to exercise reasonable care or competence in obtaining or communicating the information." *St. Joseph's Hosp.*, 154 Ariz. at 312, 742 P.2d at 813. Casey must therefore allege (1) Wright supplied "false information" to her; (2) Wright intended that the information would "guide" her in determining whether to select the Profemur® system; (3) Wright failed to exercise "reasonable care or competence" in obtaining or communicating the information; (4) Casey "relied" upon the information, (5) the reliance was "justifiabl[e];" and (6) Casey suffered "damages" (7) "cause[ed]" by such reliance. Casey's allegations must satisfy the requirements of both Rule 8(a) and Rule 9(b).

They fail to do so. First, Casey fails to state a claim under Rule 8(a), as her allegations regarding her reliance on Wright's representations or omissions are nothing more than "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 557. Indeed, she fails to set forth any facts demonstrating she or her physician actually saw or read the marketing materials at issue and no facts to the effect she heard of Wright's alleged misrepresentations. She also fails to allege which false representations she and her physician relied upon and which representations, if any, affected the decision

to use Wright's device. She merely alleges, repeatedly, that she, her physician, and the "consuming public" "relied on" the information Wright provided and Wright's marketing materials. (Docs. 7, 7.1, 7.2 at ¶¶ 124, 126.) Such threadbare allegations cannot withstand a motion to dismiss.

Second, Casey's allegations are insufficiently particular to satisfy Rule 9(b). While Casey alleges Wright made the representations at issue in 2008, 2009, and 2011, she does not identify who at Wright made the misrepresentations. To the extent the representations arose from the marketing materials Casey details in paragraphs 42 and 43 of the Complaint, it is unclear who published and distributed the materials, when and how frequently the materials were published, and to whom the materials were sent. Casey also does not allege when she and her physician were exposed to Wright's alleged misrepresentations. In short, Casey has not come close to averring the "who, what, when, where, and how of the misconduct charged." *See Vess*, 317 F.3d at 1106.

Accordingly, Casey's negligent misrepresentation claim shall be dismissed for failure to state a claim and plead with particularity. Because Casey might save her claim by providing more detailed factual allegations, leave to amend shall be granted. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.").

### C. Punitive Damages

Wright argues Casey's prayer for punitive damages should be dismissed because she is barred from recovering them under A.R.S. § 12-689, which provides in relevant part:

> [a] manufacturer, service provider or seller is not liable for exemplary or punitive damages if . . . [t]he product alleged to have caused the harm was designed, manufactured, packaged, labeled, sold or represented in relevant and material respects according to the terms of an approval, conditional approval, clearance, license or similar determination of a government agency.

The statute contains four exceptions to this rule. A.R.S. § 12-689(b). As Wright notes—

and Casey concedes—it is undisputed that the device at issue was cleared by the United States Food and Drug Administration (the "FDA") prior to being implanted in Casey and none of the four exceptions apply. (*See* Docs. 7, 7.1, 7.2 at ¶ 27 ("Wright Technology . . . gain[ed] access to the lucrative United States market through . . . Section 510(k) of the Medical Device Amendments of 1976 . . . of the Federal Food, Drug, and Cosmetic Act . . . .").) The parties agree Casey's prayer for punitive damages is subject to dismissal, and the Court concurs.

The parties disagree, however, as to whether Casey's prayer for punitive damages should be dismissed with or without prejudice. Casey's prayer for punitive damages shall be dismissed with prejudice, as Casey has not even attempted to show how it could be cured. Indeed, Casey has conceded the FDA cleared the Profemur® system and has not cited, in either the Complaint or her response, any facts that suggest one of the four statutory exceptions could apply. Any amendment would accordingly be an exercise in futility. *See, e.g.*, *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) ("Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility . . . .").

IT IS THEREFORE ORDERED that Defendant Wright Medical Technology, Inc.'s Partial Motion to Dismiss (Doc. 11) is granted in part and denied in part.

IT IS FURTHER ORDERED that Plaintiff Theresa I. Casey's negligent misrepresentation claim is dismissed, with leave to amend by February 28, 2020.

IT IS FURTHER ORDERED that Plaintiff Theresa I. Casey's prayer for punitive damages is dismissed, with prejudice.

Dated: February 13, 2020.

_____
Neil V. Wake
Senior United States District Judge